IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAVIER SOTELO CANTU,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>LANTIS ENTERPRISES, INC. d/b/a EAGLE CLIFF MANOR, LAURIE MCCAULEY, WARREN TAYLOR, MANESSA DOWNNEY, and KATHY, PHYSICAL THERAPIST,<br><br>　　　　　Defendants. | CV 20-90-BLG-TJC<br><br>**ORDER** |

Plaintiff Javier Sotelo Cantu ("Cantu") brings this action against Defendants Lantis Enterprises, Inc. d/b/a Eagle Cliff Manor, Laurie McCauley, Warren Taylor, Manessa Downey (collectively, "Eagle Cliff Defendants"), and Kathy, Physical Therapist (aka Katie Dobmeier as an employee of Synertx, Inc. d/b/a Synertx Rehabilitation ("Synertx"), alleging unlawful discrimination on the basis of his race or national origin. (Doc. 9.)

Presently before the Court are Synertx's Motion for Summary Judgment (Doc. 44); Eagle Cliff Defendants' Motion for Sanctions (Doc. 46); Cantu's Motion to Dismiss All False Documents (Doc. 49); Eagle Cliff Defendants' Motion for Summary Judgment (Doc. 53), and Eagle Cliff Defendants' Motion to Strike (Doc. 57). The motions are fully briefed and ripe for the Court's review.

1

Having considered the parties' submissions, the Court finds Synertx and Eagle Cliff Defendants' Motions for Summary Judgment should be **GRANTED**, and the remaining motions **DENIED**.

## I. BACKGROUND[1]

In 2018, Cantu suffered an ischemic stroke resulting in right-sided hemiparesis, and a fall resulting in a subdural hematoma. As a result, he was unable to perform activities of daily living, transfers, ambulation, or stairs without physical assistance, and required rehabilitation. Therefore, on or about November 20, 2018, Cantu was discharged from Billings Clinic to inpatient rehabilitation at Eagle Cliff Manor.

At the time Cantu was discharged from Billings Clinic, it appears he was agreeable to eventual placement in Sidney, Montana after completing rehabilitation. Cantu told Eagle Cliff Manor staff that although he was unsure where he would discharge to after completing rehabilitation, he reported he had a good support system in Sydney. He indicated that prior to his stroke, he was living and working in Sydney part of the year, and spent winters in Mexico with his wife and son. Cantu also indicated that he wished to return home to Mexico.

---

[1] The background facts set forth here are relevant to the Court's determination of the pending motions for summary judgment and are taken from the parties' submissions and are undisputed unless indicated otherwise.

While at Eagle Cliff Manor, Cantu began physical therapy with Dobmeier. Dobmeier is a physical therapist employed by Synertx. Synertx is a separate corporation from Eagle Cliff Manor that provides physical therapy services at Eagle Cliff.

Cantu completed approximately 50 physical therapy sessions between November 20, 2018 and February 12, 2019. Dobmeier's declaration states that Cantu's physical therapy ceased because his treatment was complete. She indicates that Cantu participated well in skilled therapy; he improved with strength, endurance and functional mobility, and when he was discharged from physical therapy, the majority of his short-term and long-term goals were met. Cantu was, therefore, expected to transition to a less restrictive environment where he could continue to work on a bike and with ambulation. Dobmeier states that after February 12, 2019, she did not have any further contact with Cantu, and was not involved in any determination relating to his ultimate discharge from Eagle Cliff Manor.

Cantu was discharged from Eagle Cliff Manor on or about March 5, 2019. Cantu had requested discharge to an independent living facility for individuals who have disabilities. Arrangements were made for Cantu to discharge to Crestview Independent Living in Sidney, with home healthcare and home physical and

occupational therapy ordered for him.  Eagle Cliff Manor transported Cantu to the facility in Sidney upon his discharge.

On June 19, 2020, Cantu filed the instant action.  (Doc. 2.)  Cantu alleges that while he was at Eagle Cliff Manor, he was subjected to derogatory racist comments and slurs.  Cantu also alleges that his physical therapist, Dobmeier, told him that he could not be given care because he did not have insurance.  Cantu further alleges that he was discharged from Eagle Cliff Manor under false pretenses – namely, that Eagle Cliff Manor staff told him that he was being discharged for purported lack of insurance.  Cantu alleges he had insurance, and the real reason he was discharged was because of his race and/or ethnicity.

On August 31, 2021, the Court issued a Scheduling Order directing the parties to file certain documents and adhere to certain obligations and timelines concerning discovery.  (Doc. 31.)  Under the Scheduling Order, the parties were required to exchange initial disclosures within 60 days.  (*Id.*)  Defendants timely filed their disclosures on October 29, 2021.  (Docs. 35, 36.)  Cantu never filed initial disclosures.

Thereafter, Defendants served discovery requests on Cantu.  Eagle Cliff Defendants propounded their first discovery requests on January 7, 2022 and Synertx propounded its first discovery requests on January 10, 2022.  Defendants' discovery requests included Requests for Admission, Document Requests and

Interrogatories. (Docs. 45-2 at 5-22, 47-1.) Cantu never responded to any of the discovery requests, despite defense counsels' multiple letters asking for him to respond. (Doc. 45-2 at 23-24, 34-35; Doc. 47-2 at 1-2; Doc. 47-3 at 1-2.)

Rather than respond to Defendants' discovery requests, Cantu repeatedly called defense counsel, and reportedly made threats, used profanity, and generally engaged in a campaign of uncivil and inappropriate conduct. (*See* Doc. 45-2 at 45, Doc. 47-4; Doc. 47-5.) On June 9, 2022, the Court received a letter from Cantu stating he was writing to inform the Court that "I will not send no discovery." (Doc. 43.)

Synertx and Eagle Cliff Defendants now move for summary judgment (Docs. 44, 53.) Eagle Cliff Defendants have also filed a motion for sanctions, requesting dismissal under Rules 41 and 16, based on Cantu's refusal to participate in discovery and non-compliance with the Scheduling Order. (Doc. 46.) In addition, Eagle Cliff Defendants move to strike Cantu's response to their motion for summary judgment, on grounds that it constitutes a tirade of falsehoods without any evidentiary or legal support. (Doc. 57.)

Cantu has filed a motion to dismiss "all false documents," requesting the court dismiss all documents filed by defense counsel on grounds that they are "a bunch of liars." (Doc. 49.) Cantu has also filed several letters, some directed to

5

the Court and others directed to defense counsel concerning his allegations in this case. (Docs. 37, 38, 41, 43, 48, 60, 61.)

## III.  DISCUSSION

### A.  Cantu's Motion to Dismiss "False Documents"

As an initial matter, the Court declines Cantu's request to dismiss "all false documents from Bruce Fain and Sean Morris." (Doc. 49.) Cantu has not presented any legal argument, evidence, or valid basis for his motion. Rather, Cantu calls defense counsel "liars," claims they are "more crooked than a banana," and reasserts his general allegations in this case. As such, Cantu's motion is groundless, and will be denied.

### B.  Defendants' Motions for Summary Judgment

Both Synertx and Eagle Cliff Defendants argue that Cantu's failure to respond to their Requests for Admissions results in the requests being deemed admitted. Based on the admitted facts, Defendants argue there are no genuine issues of material fact, and they are entitled to summary judgment.

#### a.  Summary Judgment Standards

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those which may affect the outcome

of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*.

The party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party must "go beyond the pleadings and by 'the depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P.

56(e)).  The opposing party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252).

When making this determination, the Court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party.  *See Matsushita*, 475 U.S. at 587.  "The district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein."  *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).  Therefore, the court is not obligated "to scour the record in search of a genuine issue of triable fact."  *Kennan v. Allen*, 91 F.3d 1275, 1279 (9th Cir. 1996) (citing *Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

      b.    <u>Defendants are Entitled to Summary Judgment</u>

In the discovery served on Cantu, Defendants made certain Requests for Admissions that are relevant to Cantu's claims.  (Doc. 45-2 at 19-21; Doc. 47-1 at

4-5.) In particular, Synertx served the following Requests:[2]

>**REQUEST FOR ADMISSION NO. 1:** Please admit that you were discharged from physical therapy following your appropriately completed rehabilitation course.
>
>**REQUEST FOR ADMISSION NO. 3:** Please admit that you were properly and appropriately treated by Synertx Rehabilitation, Synertx Rehabilitation's staff and Katie Dobmeier.

(Doc. 45-2 at 19.)

Eagle Cliff Defendants served the following Requests:

>**REQUEST FOR ADMISSION NO. 1:** Please admit that you told Eagle Cliff Manor employees that you wanted to return to Sidney, Montana after your therapy was complete.
>
>**REQUEST FOR ADMISSION NO. 2:** Please admit that you went to Crestwood Inn in Sidney, Montana upon discharge from Eagle Cliff Manor in March 2019.
>
>**REQUEST FOR ADMISSION NO. 3:** Please admit that Eagle Cliff Manor provided you transportation to Crestwood Inn in Sidney, Montana upon your discharge from Eagle Cliff Manor.

(Doc. 47-1 at 4-5.)

---

[2] Synertx argues in its brief that its discovery included a "**REQUEST FOR ADMISSION NO. 6**" that requested: "Please admit that you do not have a claim against Synertx Rehabilitation and/or its employees." (Doc. 45 at 11.) The quoted language, however, does not appear anywhere in Synertx's discovery requests. Rather, "**REQUEST FOR ADMISSION NO. 6**" in Synertx's First Discovery Requests to Plaintiff actually requested: "Please admit that you were notified of the fact that, effective March 1, 2019, you were responsible to pay Eagle Cliff Manor $997.00 per month." (Doc. 42-5 at 20-21.) Accordingly, the Court will not find Cantu is deemed to have admitted that he "do[es] not have a claim against Synertx Rehabilitation and/or its employees."

To date, Cantu has not responded to any of Defendants' discovery requests. Rule 36(a) states that a matter is deemed "admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed.R.Civ.P. 36(a)(3). Once admitted, the matter "is conclusively established unless the court, on motion, permits the admission to be withdrawn or amended." Fed.R.Civ.P. 36(b).

Because Cantu failed to respond to Defendants' Requests for Admission, the requests are deemed admitted. Cantu has not filed a motion to withdraw his admissions. As such, the admitted matters are conclusively established for purposes of this action.

The Court finds Cantu's admissions preclude any finding that there exists a triable issue of fact. Specifically, with regard to Synertx, Cantu alleges that his physical therapy was improperly discontinued for purported lack of insurance. Cantu claims that he had insurance, but Dobmeier told him he "couldn't be given care because I did not have insurance." (Doc. 9 at 8.) Synertx contends Cantu was not discharged from physical therapy under a pretext. Rather, Synertx states Cantu completed approximately 50 therapy sessions, had substantially achieved the goals of physical therapy, and was discharged because he had properly and appropriately completed his treatment. Cantu is deemed to have admitted that he was discharged

from physical therapy following his appropriately completed rehabilitation course. As such, there are no disputed issues of material fact as to Synertx.

With regard to Eagle Cliff Defendants, Cantu claims that Eagle Cliff Manor inappropriately discharged him on account of his race. Eagle Cliff Defendants contend Cantu was discharged from Eagle Cliff Manor because he had met his rehabilitation goals at the facility. They further assert Cantu was discharged to an assisted living facility in Sidney, at his request. Cantu is deemed to have admitted that he told Eagle Cliff Manor staff he wanted to return to Sidney, Montana after his therapy was complete. Cantu also admitted that he appropriately completed his rehabilitation course, and that Eagle Cliff Manor transported him to Crestwood Inn in Sidney upon his discharge. Accordingly, there are no disputed issues of material fact as to Cantu's claims against Eagle Cliff Defendants.

Moreover, even if the Requests for Admission were not deemed admitted, Cantu has not cited any evidence that would raise a triable issue of fact. For one, Cantu failed to substantively respond to the motions for summary judgment. Instead, he lobs insults at defense counsel and accuses them of lying and threatening him. (Docs. 48, 56, 59.) He also repeatedly demands a copy of a letter that he claims Eagle Cliff Manor staff allegedly relied on to justify his discharge. Defendants have stated, however, that no such letter exists. (Docs. 45-1 at ¶ 25; 45-2 at 35; 47-3 at 1.)

But even construing Cantu's allegations as responsive to the pending motions, they amount to no more than general denials of the facts presented by Defendants.  Cantu repeatedly alleges that racist remarks were made to him and that his discharge was racially motivated.  But these allegations alone are insufficient to raise a genuine issue of material fact.  A party opposing summary judgment cannot manufacture a contested fact by relying on unsupported, conclusory and argumentative statements. *Barcamerica Int'l USA Trust v. Tyfield Importers, Inc.,* 289 F.3d 589, 593 n. 4 (9th Cir. 2002); *Hagemann v. Robinson*, 2015 WL 3899226, *13 (D. Mont. June 16, 2015).  Here, Cantu does not cite any evidence, such as an affidavit or discovery, to oppose any fact presented by Defendants.  As such, the facts remain undisputed.  *Metcalf v. ONEOK, Inc.*, 2019 WL 2746037, *3 (D. Mont. June 12, 2019), *report and recommendation adopted by* 2019 WL 2745740 (D. Mont. July 1, 2019) (explaining facts may be deemed admitted when not properly opposed); L.R. 56.1(b)(1)(B); Fed. R. Civ. P. 56(e)(2). In short, there are simply no facts presented to the Court which would support Cantu's claim that any action taken by Defendants was racially motivated.

The Court, therefore, finds that Synertx and Eagle Cliff Defendants are entitled to summary judgment.

/ / /

/ / /

### C.   Eagle Cliff Defendants Motions for Sanctions and to Strike

Because the Court finds Defendants are entitled to summary judgment, the Court need not reach the merits of Eagle Cliff Defendants' Motion for Sanctions (Doc. 46) or Motion to Strike (Doc. 57).  Accordingly, the motions will be denied as moot.

### V.   CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1. Synertx's Motion for Summary Judgment (Doc. 44) is **GRANTED**;

2. Eagle Cliff Defendants' Motion for Sanctions (Doc. 46) is **DENIED as moot**;

3. Cantu's Motion to Dismiss All False Documents (Doc. 49) is **DENIED**;

4. Eagle Cliff Defendants' Motion for Summary Judgment (Doc. 53) is **GRANTED**; and

5. Eagle Cliff Defendants' Motion to Strike (Doc. 57) is **DENIED as moot**.

**IT IS ORDERED**.

DATED this 17th day of March, 2023.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge